## HEADON v. TURNER, ADMINISTRATOR.

1. The administrator of an intestate, against whom a judgment has been recovered, when living, is the proper party to sue out a writ of error, and may do so on application to the clerk. If he supersedes the judgment, it may be affirmed with damages, as in other cases.

GOLDTHWAITE, J.—A motion is made for judgment on a certificate of the clerk of the county court of Sumter county, which recites, that, at the February term, 1843, of that court, John Headon recovered a judgment against James House for 1082 dollars; that House is now dead, and Benjamin D. Turner is his administrator. That Turner, administrator, applied for, and obtained a writ of error, giving bond, &c. The question is, whether a judgment of affirmance can be rendered on this certificate.

A writ of error, by the course of the common law, issued out of the court of chancery, and was considered as a new action. [2 Wms. Saund. 101, *a;* 101, *g.*] When the defendant to the judgment, in debt or damages, died after judgment, his executor

.or administrator was the proper party to sue out the writ. [6 Comyns' Digest Pleader, 313, *g*.

It is true, our statutes have changed the manner of issuing the writ, but they do not affect the right of the party in interest to sue it out in all the cases where it was allowable by the common law. By the act of 1820, [Clay's Digest, 306, § 3,] it is made the duty of the clerks of the circuit courts, on the application of the party against whom any final judgment shall be rendered, or on the application of the attorney of the said party, to issue a writ of error returnable to the Supreme Court. The same rule is extended to the county courts by the act of 1821. [Clay's Digest, 297, § 4.]

It is evident, that the strict letter of this statute does not include the case of a person who becomes connected with the judgment in consequence of the death of the defendant; nor does it reach the case of a plaintiff, who wishes to reverse a judgment rendered in his favor; yet it is every day's practice for the latter to sue out a writ of error on application to the clerk.

We think the statute must receive the reasonable construction of extending to all cases in which a writ of error could be sued out at common law ; and we incline to this opinion, because there seems to be an evident intention to allow the writ in its most general sense.

It is true, this court, on three occasions, [Sewall v. Bates, 2 Stew. 462 ; S. C. 3 ib. 199 ; Bettis v. Taylor, 6 Porter, 333,] had directed process to issue hence to the court below ; and we do not now doubt its authority to do so, in virtue of its general superintendence and control over inferior jurisdictions. But if the power to allow writs of error in a case like this, and to many which are similar, is not with the clerk, great injury might result to a suitor. The case of a death pending the execution, will illustrate the necessity which exists for giving these acts a liberal construction.

We have, however, had a somewhat similar point before us at a former term ; and, in Perrine v. Babcock, [6 Porter, 391,] we held, that where there were several defendants, the death of one could be suggested in the writ issued by the clerk, at the instance of the others. We then held, that, as to cases not within the terms of the statute, it was our duty so to mould the process, as to produce the least inconvenience to parties ; and that, unless

injury would result from that course, it would always be prefer-
able the writ should issue from the court below.

The statute, under which plaintiff in error is authorized to sus-
pend the judgment, is sufficiently broad to cover every case, in-
asmuch as the bond is to be given by the party applying for the
writ; [Clay's Digest, 307, § 6 ;] and the statute was extended to
a writ of error issued from this court in Bettis v. Taylor, [6 Por-
ter, 335.]

This view of the subject shows the writ of error was proper-
ly issued; and, therefore, the party is entitled to judgment on his
certificate.